```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```

| | |
|---|---|
| **RITA K. HORNSBY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | No. 19-1228-TMP |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Before the court is plaintiff Rita K. Hornsby's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 10.) For the reasons below, the decision is affirmed.

## I.  FINDINGS OF FACT

On October 26, 2016, Hornsby applied for disability insurance benefits under Title II of the Act. (R. 151-7.) Hornsby alleged disability beginning on January 15, 2016, due to back problems, tailbone problems, right knee problems, problems with her left foot, arthritis in both hands, loss of hearing, acid reflux, and neck problems. (R. 171.) Hornsby's application was denied

initially and upon reconsideration by the Social Security Administration ("SSA"). (R. 54; 67.) At Hornsby's request, a hearing was held before an Administrative Law Judge ("ALJ") on June 19, 2018. (R. 32.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Hornsby was not disabled from January 15, 2016 through the date of his decision. (R. 15.) At the first step, the ALJ found that Hornsby had not engaged in substantial gainful activity during the relevant period. (R. 15.) At the second step, the ALJ concluded that Hornsby suffers from the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of the right knee status post partial joint replacement, and osteoarthritis of the hands. (R. 13.) At the third step, the ALJ concluded that Hornsby's impairments do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15.) Accordingly, the ALJ had to then determine whether Hornsby retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Hornsby] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b). However, [Hornsby] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds. [Hornsby] can frequently use the hands for all activities.

-2-

[Hornsby] should avoid concentrated exposure to hazards. (R. 17.) The ALJ then found at Step Four that Hornsby was able to perform her past relevant work as a sales clerk. (R. 23.) Accordingly, on October 11, 2018, the ALJ issued a decision denying Hornsby's request for benefits after finding that Hornsby was not under a disability because she retained the RFC to perform past relevant work. (R. 27.) On September 5, 2019, the SSA's Appeals Council denied Hornsby's request for review. (R. 1.) The ALJ's decision then became the final decision of the Commissioner. (R. 1.) On October 3, 2019, Hornsby filed the instant action.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v.

-3-

Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506,

509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc.

-5-

Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On

the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C.   Medical Opinion Evidence**

Hornsby's only argument for reversal is that the ALJ erred in weighing the medical opinion evidence. Hornsby argues that the ALJ should have given more weight to the opinion of Dr. John Woods, an examining physician, than to the other medical opinions in the record. The ALJ gave little weight to Dr. Woods's opinion and partial weight to each of the other medical opinions in the record. (R. 21-3.)

In formulating an RFC finding, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "An opinion from a treating physician is 'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician. A nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference." Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted). "ALJs must evaluate every medical opinion [they] receive by considering several enumerated factors, including the nature and length of the doctor's relationship with the claimant and whether the opinion is supported by medical evidence and consistent with the rest of the record." Stacey v. Comm'r of Soc. Sec., 451 F. App'x 517, 519 (6th Cir. 2011). When

an ALJ's decision rejects the opinion of a medical expert who is not a treating physician, the decision "must say enough to allow the appellate court to trace the path of [the ALJ's] reasoning." Id. (internal citation and quotation omitted).

Although Social Security regulations establish rules about how ALJs must weigh medical opinions, "[t]he Social Security Act instructs that the ALJ — not a physician — ultimately determines a claimant's RFC." Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010). When medical opinions "are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner." Keith v. Colvin, No. 3:14-CV-02261, 2016 WL 1212068, at *5 (M.D. Tenn. Mar. 29, 2016). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." Coldiron, 391 F. App'x at 439. Indeed, it is "precisely the ALJ's role" to evaluate functional limitations in light of the available evidence. Livingston v. Comm'r of Soc. Sec., 776 F. App'x 897, 901 (6th Cir. 2019). "In a battle of the experts, the agency decides who wins." Justice v. Comm'r Soc. Sec. Admin., 515 F. App'x 583, 588 (6th Cir. 2013).

The ALJ justified giving little weight to Dr. Woods's opinion as follows:

> Dr. Woods examined the claimant on a one-time basis at the request of the claimant's representative, though the claimant testified that the examination lasted only 30 to 45 minutes and consisted of walking, bending, twisting and observation [of] her hands, feet, and arms. The opinion is not well supported or explained. Dr. Woods's opinion relies to a great extent on the claimant's subjective reports of pain, particularly regarding the claimant's exertional capacity, use of foot controls, and exposure to extreme cold and vibrations. The doctor's examination showed generally moderate limitations, with particular note of the claimant's full range of motion of the claimant's lumbar spine and right knee, which is inconsistent with the level of exertional and postural limitations opined. There is little, if any, evidence, either in Dr. Woods's own examination or the record as a whole to support the limitations in reaching opined on in pushing/pulling. Because Dr. Woods made little note of hearing difficulties beyond noting that the claimant wore hearing aids, there is little support in his observations for hearing or noise limitations. The relatively mild observations of cervical range of motion provide little support for the opined limitations in operating a motor vehicle. Due to these deficiencies, the opinion is given little weight.

This assessment of Dr. Woods's opinion is supported by the record. Dr. Woods's physical examination showed generally moderate abnormalities: a "slightly waddling" gait, "moderately decreased cervical extension" though "cervical range of motion was otherwise normal," "mildly diminished" grip strength, "no muscle atrophy," "full lumbar range of motion," a normal ankle exam with "full range of motion and normal motor strength," negative straight leg raise testing, "mild crepitus" in the left knee with "full range of motion," prominent swelling in the joints of the finger, and less

-10-

pronounced swelling in the knees. (R. 1217.) Dr. Woods also endorsed a very restrictive set of limitations on Hornsby's RFC. It was reasonable for the ALJ to realize these physical exam findings conflicted with Dr. Woods's assessment of Hornsby's RFC and for the ALJ to resolve that conflict by discounting Dr. Woods's opinion. That evidence alone is enough for a reasonable mind to accept the ALJ's conclusion. See Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). The ALJ's decision was supported by substantial evidence.

### III.  CONCLUSION

For the reasons above, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

July 16, 2020
Date